MELISSA MEEKER HARNETT (Bar No. 164309)
    mharnett@wccelaw.com
ROBERT L. ESENSTEN (Bar No. 65728)
    resensten@wccelaw.com
JORDAN S. ESENSTEN (Bar No. 264645)
    jesensten@wccelaw.com
**WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.**
5567 Reseda Boulevard, Suite 330
Post Office Box 7033
Tarzana, California 91357-7033
Telephone: (818) 705-6800 • (323) 872-0995
Facsimile:  (818) 996-8266

JEFFREY F. KELLER (Bar No. 148005)
    jkeller@kellergrover.com
KATHLEEN R. SCANLAN (Bar No 197529)
    kscanlan@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California  94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

Attorneys for Plaintiff, ALBERT ALATORRE AND ON
BEHALF OF ALL OTHERS SIMILARLY SITUATED

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBERT ALATORRE, an individual, and on Behalf of all Others Similarly Situated,<br><br>       Plaintiffs,<br><br>   vs.<br><br>24 HOUR FITNESS USA, INC.,<br><br>       Defendant. | CASE NO. 3:11-cv-4318 JCS<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>Date:    March 16, 2012<br>Time:    9:30 a.m.<br>Crtrm.:  G<br>Judge:  Honorable Joseph C. Spero |

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

## TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ...............................3

       A.     THE LITIGATION ....................................................................................4

       B.     THE SETTLEMENT ..................................................................................5

              1.     The Class Definition ...................................................................5

              2.     Settlement Benefits .....................................................................5

                     a.     Direct Relief for the Settlement Class Members ...............6

                     b.     Class Notice, Claims, and Settlement Administration........9

                     c.     Injunctive Relief...............................................................10

III.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE
       SETTLEMENT BECAUSE IT IS FAIR, REASONABLE AND BENEFICIAL
       TO THE SETTLEMENT CLASS. ......................................................................12

       A.     THE SETTLEMENT AGREEMENT IS PRESUMPTIVELY FAIR .....................13

       B.     THE STRENGTH OF PLAINTIFF'S CASE ...................................................14

       C.     COMPLEX, RISKY, AND LENGTHY LITIGATION, AT GREAT EXPENSE. .................15

       D.     THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL........16

       E.     THE AMOUNT OFFERED IN SETTLEMENT. ..............................................17

       F.     THE EXTENT OF DISCOVERY COMPLETED AND STAGE OF PROCEEDINGS............18

       G.     THE EXPERIENCE AND VIEWS OF COUNSEL. ..........................................19

       H.     THE PRESENCE OF A GOVERNMENTAL PARTICIPANT..............................20

       I.     THE REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT. ............20

       J.     THE ABSENCE OF COLLUSION IN SETTLEMENT PROCESS. ...........................20

IV.    A SETTLEMENT CLASS HAS BEEN PROPERLY CERTIFIED FOR
       PURPOSES OF OBTAINING FINAL APPROVAL OF THE SETTLEMENT.........21

V.     CONCLUSION. ...................................................................................................21

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**TABLE OF AUTHORITIES**

**Page**

<u>Cases</u>

*Aguilar v. Avis Rent A Car Sys., Inc.,*
    21 Cal. 4th 121 (1999)................................................................................ 11

*Bellows v. NCO Fin. Sys.,*
    2008 U.S. Dist. LEXIS 103525, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008)................ 16

*Blessing v. Sirius XM Radio Inc.,*
    09 CV 10035 HB, 2011 WL 3739024 (S.D.N.Y. Aug. 24, 2011) ......................................... 7

*Churchill Vill., LLC v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004)........................................................................ 12

*Class Plaintiffs v. Seattle,*
    955 F.2d 1268 (9th Cir. 1992)........................................................................ 12

*Dupler v. Costco Wholesale Corp.,*
    705 F. Supp. 2d 231 (E.D.N.Y.2010)............................................................... 7

*Ellis v. Naval Air Rework Facility,*
    87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................ 13

*F.T.C. v. Affordable Media,*
    179 F.3d 1228 (9th Cir. 1999)........................................................................ 11

*Glass v. UCS Fin. Servs., Inc.,*
    2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ........................................... 14, 15, 20

*Grannan v. Alliant Law Group, P.C.,*
    C10-02803 HRL, 2012 WL 216522 (N.D. Cal. Jan. 24, 2012) ......................................... 15

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998)........................................................................ 12, 21

*In re Excess Value Ins. Coverage Litig.,*
    M-21-84RMB, 2004 WL 1724980 (S.D.N.Y. July 30, 2004) ........................................... 7

*In re Farmers Group Stock Options Litig.,*
    1991 U.S. Dist. LEXIS 20133 (E.D. Pa. Dec. 19, 1991) ................................................ 15

*In re Heritage Bond Litig.,*
    2005 U.S. Dist. LEXIS 13555, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................. 13

*In re HP Inkjet Printer Litig.,*
    5:05-CV-3580 JF, 2011 WL 1158635 (N.D. Cal. Mar. 29, 2011)........................................ 8

*In re Marine Midland Motor Vehicle Leasing Litig.,*
    155 F.R.D. 416 (W.D.N.Y. 1994)..................................................................... 20

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*In re Mego Financial Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000)..................................................................... 16, 18

*In re Painewebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997)................................................................. 19

*In re TD Ameritrade Account Holder Litig.*,
   Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011).... 17

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998)................................................................... 17

*Linney v. Cellular Alaska P'ship.*,
   1997 WL 450064 (N.D. Cal. July 18, 1997) .............................................. 13

*Lo v. Oxnard European Motors, LLC*,
   2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ........................................... 16

*Matek v. Murat*,
   638 F. Supp. 775 (C.D. Cal. 1986) ........................................................... 15

*Meyenburg v. Exxon Mobil Corp.*,
   3:05-CV-15-DGW, 2006 WL 5062697 (S.D. Ill. June 5, 2006) .................. 7

*Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................... passim

*Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)................................................................. 12, 14

*Oppenlander v. Standard Oil Co.*,
   64 F.R.D. 597 (D. Colo. 1974) ................................................................. 15

*Pacific Enters. Sec. Litig.*,
   47 F.3d 373 (9th Cir. 1995) ...................................................................... 19

*Richards v. Jain*,
   168 F. Supp. 2d 1195 (W.D. Wash. 2001) ............................................... 15

*Romero v. Producers Dairy Foods, Inc.*,
   2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .......................................... 13

*Simon v. Toshiba Am.*,
   No. C 07-06202 MHP, 2010 WL 1757956 (N.D. Cal. Apr. 30, 2010) ......... 8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ...................................................................... 12

*Touhey v. United States*,
   No. EDCV 08-01418-VAP, 2011 WL 3179036 (C.D. Cal. July 25, 2011)........ 17

*United States v. Benny*,
   559 F. Supp. 264 (N.D. Cal. 1983) .......................................................... 15

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

*United States v. Uniroyal, Inc.*,
   300 F. Supp. 84 (S.D.N.Y. 1969) ........................................................................ 11

*United States v. W. T. Grant Co.*,
   345 U.S. 629 (1953) ........................................................................ 11

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................ 19

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S. Ct. 2541 (2011) ........................................................................ 17

*White v. Experian Info. Solutions, Inc.*,
   803 F. Supp. 2d 1086 (C.D. Cal. 2011) ........................................................................ 8, 17

<u>Statutes</u>

California Consumers Legal Remedies Act,
   Cal. Civ. Code § 1750 ........................................................................ 4

Class Action Fairness Act of 2005,
   28 U.S.C. § 1715 ........................................................................ 20

Racketeer Influenced Corrupt Organizations Act,
   18 U.S.C. §§ 1961-1968 ........................................................................ 4

Unfair Competition Act,
   Cal. Bus. & Prof. Code § 17200 ........................................................................ 4

<u>Rules</u>

Fed. R. Civ. P. 23 ........................................................................ 12, 21

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  I.      **INTRODUCTION**

2          On November 23, 2011, the Court preliminarily approved a settlement agreement (the

3  "Settlement Agreement") dated August 24, 2011, as amended on November 18, 2011, between

4  Plaintiff Albert Alatorre ("Plaintiff") and Defendant 24 Hour Fitness, USA, Inc. ("24 Hour")

5  (hereinafter collectively the "Parties"). Since that time, the proposed settlement has received

6  support from class members. As of February 27, 2012, the Settlement Class returned nearly 4,000

7  claim forms to receive *100 percent* of the average out-of-pocket damages at issue and the

8  remaining class members will *automatically* be mailed a no-strings-attached certificate for three

9  months of free gym access to all U.S. 24 Hour Fitness clubs, valued at $149.99 to $199.99. In a

10 sign of support for the Settlement, not a single class member has objected and only four class

11 members have requested exclusion. The *Alatorre* settlement is a careful and balanced compromise

12 between the Parties and should be finally approved as fair, reasonable, and adequate.

13         The Settlement provides direct benefits to members of the class, which includes persons

14 who entered an Unlimited Guest Privileges Special Privilege Agreement ("Unlimited Guest

15 Privleges SPA" as defined in the Settlement Agreement[1]) and who were assessed Electronic Fund

16 Transfer ("EFT") charges by 24 Hour after providing notice of cancellation of the Unlimited Guest

17 Privileges SPA from June 1, 2004 through February 28, 2010,. The Settlement also provides

18 indirect benefits to the Settlement Class and to consumers holding active Unlimited Guest

19 Privileges SPAs which may be canceled in the future. The conservative value of the Settlement is

20 estimated to be between $912,808.06 and $1,012,771.37. The Settlement provides:

21         • Direct relief for **every** class member: Every one of the 47,858 Settlement Class

22           Members will receive one of two benefits at his or her option: either (a) if a claim is

23           submitted, a $12.11 payment, which represents 100% of the average post-cancellation

24           charges assessed against Settlement Class Members, or (b) if a claim is not submitted,

25           a certificate for a three-month all-access membership at 24 Hour Fitness valued at

26  ────────────────

27 [1] Unless stated otherwise herein, all capitalized terms have the same meaning as those in the
    Settlement Agreement.

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

$149.99 to $199.99 ("Certificate").  Approximately 92.5% of Settlement Class Members neither chose to object to the Settlement or file a claim for reimbursement and thus will benefit by virtue of receiving the Certificate.  If the Court grants final approval and enters final judgment, approximately 49,371 Certificates, valued at between $7,405,156.29 and $9,873,706.29, and approximately 3,979 checks for $12.11, collectively valued at $48,185.69, will be distributed.  Assuming that the value of the Certificate is the lower sum of only $149.9, and that only 6%[2] of those that opted to receive the Certificate will use the Certificate, the Class will still conservatively receive at least **$492,606.06** in **direct** settlement benefits.  If the other benefits provided by the Settlement are included, the total value of the settlement is between $912,808.06 and $1,012,771.37.

- All costs of notice and settlement administration to be paid by 24 Hour: The Settlement Class also benefits by virtue of 24 Hour's payment of all costs of the comprehensive Notice Plan and efficient procedures for administration of the Settlement.  These costs being paid by 24 Hour are estimated to total approximately **$110,000**.  This is an additional, indirect benefit to the Settlement Class Members.

- Injunctive relief: The Settlement provides that 24 Hour is barred from resuming its practice of assessing post-request for cancellation of EFT charges to persons holding an Unlimited Guest Privileges SPA.  This injunctive relief will save current Unlimited Guest Privileges SPA holders and those that recently cancelled their Unlimited Guest Privileges SPA approximately **$110,201**, conservatively, in potential post-cancellation charges if those memberships are canceled in the future (as explained below).

- Attorneys' fees and costs: As an additional benefit, so that attorneys' fees and costs need not be paid by deducting from settlement class benefits outlined above, up to **$200,000** will be paid entirely by 24 Hour to cover attorneys' fees and litigation costs

---

[2] In the *Friedman* Class Action, 6% of those that chose the Certificate used the Certificate.

incurred by Plaintiffs on behalf of the Settlement Class, separate and apart from the direct benefits paid to the Settlement Class Members.

After implementing the Notice Plan approved and ordered by the Court, and allowing the Settlement Class Members to weigh in, it is evident that the members consider this to be a favorable Settlement with a just and equitable resolution.  Not a single Settlement Class Member has objected to the Settlement, and only four have opted out of the Settlement.  The number of opt outs and objections represents only .008% of the 47,858 Settlement Class Members, and only .007% of the total number of notices mailed to Settlement Class Members.[3]  Also, not one of the State Attorney Generals felt it necessary to object after receiving CAFA notice of the settlement.  Thus, the overwhelming majority of the Settlement Class considers this Settlement to be fair, reasonable, and adequate.  This is a great result for all concerned, and the Settlement is therefore deserving of the Court's final approval.

## II.     SUMMARY OF THE LITIGATION AND SETTLEMENT

In prior filings with the Court concerning the Settlement, Plaintiff has previously discussed in detail the complete history of this litigation and the negotiation of this Settlement, including the history of a previous class action entitled *Friedman v. 24 Hour Fitness USA, Inc.*, USDC, Central District, Case No. 2:06-cv-6282-AHM (the "*Friedman* Class Action").  Therefore, in the interest of efficiency and judicial economy, Plaintiff will briefly summarize and reiterate the relevant facts here, but refers the Court to his prior submissions.[4]

---

[3] The 47, 858 number corresponds to the number of individual Settlement Class Members.  The Settlement allows SPA Members to receive multiple benefits based on the number of Charges at Issue, attributed to them even if for <u>multiple</u> memberships.  (*See* Harnett Decl. Ex. 1 (Settlement Agreement).)  A few Settlement Class Members had more than one SPA membership, and therefore received more than one notice of the Settlement.  (Brannon Decl. ¶ 10.)

[4] The factual and procedural background of this litigation is set forth in detail in Plaintiff's Motion for Preliminary Approval of Class Action Settlement Agreement (Dkt. #7), Parties' Joint Supplemental Brief in Support of Preliminary Approval (Dkt. #19), and Plaintiff's Motion for Attorneys' Fees, Costs and Incentive Award (Dkt. #26-1).

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

### A. THE LITIGATION

On August 30, 2011, Plaintiff Albert Alatorre filed the Complaint commencing the instant action.  Mr. Alatorre alleged that he joined 24 Hour in March, 2009 and signed an Unlimited Guest Privileges SPA.  (Compl. ¶ 22.)  The Complaint further alleged that 24 Hour made post-request for cancellation EFT charges to the bank or credit/debit card accounts of Settlement Class Members without authorization.  (*Id.* ¶ 18.)  Based on this, Mr. Alatorre alleged federal and state claims under the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968 ("RICO"), the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.* ("CLRA"), the Unfair Competition Act, Cal. Bus. & Prof. Code § 17200 *et seq.* ("UCL"), and for breach of contract.  (*Id.* ¶¶ 47-139.)

The claims asserted by Mr. Alatorre in the instant action arise out of essentially the same practice that gave rise to  similar  claims asserted by other 24 Hour members in the *Friedman* Class Action.  (*See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Approval, Dkt. #7, at 2:18-2-23.) However, because the contractual agreements for the Unlimited Guest Privileges SPA, including the dues amount thereunder, SPA Membership dues, and the EFT charges were not the same as the monthly payment memberships settled as part of the *Friedman Class Action*, Settlement Class Members in the instant action did not receive benefits under one settlement in the *Friedman* Class Action for post-request for cancellation dues charges on an Unlimited Guest Privileges SPA.  (*Id.* at 3:21-4:9.)  The *Friedman* Class Action was intensively litigated for more than three years.  (*Id.* at 2:24-3:7.)  The parties to the *Friedman* Class Action were able to reach a settlement agreement after extensive mediation with two different experienced mediators.  (*Id.* at 3:7-18.)

Here, using information learned in the *Friedman* Class Action, the Parties were able to efficiently negotiate a settlement of this action.  Beginning in or around June 2010, the Parties began negotiations concerning settlement of the similar claims arising out of the Unlimited Guest Privileges SPAs.  (*See* Mem. of P. & A. in supp. of Pl.'s Mot. for Attorneys' Fees, Costs and Incentive Award, Dkt. #26-1, at 4:1-24.)  Although some information discovered in the *Friedman* Class Action aided the efforts here, the Parties also fulfilled their due diligence obligations and conducted informal discovery relevant to the Unlimited Guest Privileges SPAs.  (*Id.*)  The Parties

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  then spent significant time negotiating the specific terms of the settlement agreement.  (*Id.*)  In an

2  effort to preserve judicial resources, Plaintiff refrained from filing a lawsuit as long as settlement

3  negotiations progressed.  (*Id.*)  On August 24, 2011, the Parties executed the settlement, having

4  reached agreement as to all the terms.  (*Id.*)  On August 30, 2011, as permitted by the Settlement

5  Agreement, Plaintiff Alatorre filed his complaint in the instant action.  (*Id.*)

6  The Parties filed a Joint Motion for Preliminary Approval of the Settlement Agreement on

7  September 6, 2011, and, on November 9, 2011, filed a Joint Supplemental Brief in support of the

8  Preliminary Approval Motion.  The Court granted preliminary approval on November 23, 2011,

9  conditionally certifying the Settlement Class, appointing Plaintiff as Settlement Class

10  Representative, and appointing Wasserman, Comden, Casselman & Esensten, L.L.P. and Keller

11  Grover LLP as counsel for the Settlement Class ("Class Counsel").  (*See* Nov. 23, 2011 Order, Dkt.

12  #25, ¶¶ 2, 4-5.)  The Parties now move for final approval of the Settlement.

13  **B.  THE SETTLEMENT**

14  After the informal discovery and settlement negotiations between the Parties described

15  above, and preparation of the complaint and settlement related documents, the Parties entered into

16  the Settlement Agreement to resolve the claims of persons who entered into an Unlimited Guest

17  Privileges SPA and were assessed post-request for cancellation EFT charges.

18  **1.  The Class Definition**

19  The Settlement Class includes "all Persons who incurred Charges at Issue during the Class

20  Period."  (*See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Approv., Dkt. #7, at 6:9-14.)

21  According to 24 Hour, there are approximately 53,354 EFT "Charges at Issue," assessed against

22  approximately 47,858 Settlement Class Members, accounting for a total of $646,116.94 in Charges

23  at Issue from June 1, 2004 through February 28, 2010, the last day on which 24 Hour took the

24  Charges at Issue from Settlement Class Members.  (*Id.* at 6:24-27; *see also* Brannon Decl. ¶ 13.)

25  The average amount of each of the Charges at Issue is $12.11.  (*Id.* at 6:27-28.)

26  **2.  Settlement Benefits**

27  As noted previously, the proposed Settlement provides valuable benefits to members of the

28  Settlement Class specifically, and to consumers generally.  It provides for a concrete choice of

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

direct benefits for Settlement Class Members who have allegedly suffered injury as a result of 24 Hour's past practices, and it guarantees that all Settlement Class Members will receive one of those choices.  The Settlement also permanently precludes 24 Hour from resuming the dues collection practices at issue in this lawsuit with respect to any persons who cancel an Unlimited Guest Privileges SPA in the future.  In addition, the Settlement requires that 24 Hour bear the costs of providing notice to the Settlement Class and costs of administering the Settlement, as well as requires that 24 Hour pay an incentive award to Plaintiff, and all approved attorneys' fees and costs incurred on behalf of Plaintiff and the Settlement Class, up to $200,000.  These are all significant added indirect benefits for the Settlement Class. (*Id.* at 7:1-9.)  In total, the value of the Settlement is between $912,808.06 to $1,012,771.37, which represents **141% to 157%** of the *total* Charges at Issue.

### a.  Direct Relief for the Settlement Class Members

Each of the 47,858 Settlement Class Members who had Charges at Issue taken from their accounts by 24 Hour, and has not opted out of the Settlement, will receive a benefit if the Settlement is finally approved.  The Settlement Class Members were given a choice of settlement benefits.  By submitting a claim for reimbursement, Settlement Class Members could choose to receive a $12.11 monetary reimbursement, representing **100%** of the average amount of the Charges at Issue.  (Harnett Decl. Ex. 1 (Settlement Agreement) at ¶ 2.1.)  Alternatively, Settlement Class Members had the choice of opting to ***automatically*** receive a three-month Certificate giving them the right to use any of 24 Hour's U.S. clubs, including higher level Super-Sport and Ultra-Sport clubs.  (*Id.*)  As a result, a Settlement Class Member electing to take the Certificate will have unrestricted access to 24 Hour's most expensive, higher level membership clubs, even though the Unlimited Guest Privileges SPAs provided lesser benefits and were generally restricted to a single club.  They did not need to do anything to receive this benefit.  Settlement Class Members who did not select the reimbursement option will automatically receive the Certificate without having to file a claim form.  (*Id.*)

The Certificate provides Settlement Class Members with three months free access to all 24 Hour clubs, so these Certificates are similar to, and more valuable than, memberships regularly

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1    sold by 24 Hour for $149.00 to $199.99.  24 Hour sells 90 day single club memberships for

2    $149.99 to $199.99, depending on the level of club attended ($149.99 for one-club Sport and

3    $199.99 for one-club Super Sport).  (Harnett Decl. ¶ 8.)  Since the free memberships provided by

4    the Certificate will provide Settlement Class Members with access to **all** 24 Hour clubs, and are

5    not limited to a single club membership, the Certificate's three month membership privilege can

6    be reasonably valued at more than $199.99.  (Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim.

7    Approv., Dkt. #7, at 7:27-8:16; *see also* Joint Suppl. Br. in Supp. of Preliminary Approval, Dkt. #19, at

8    9:3-5.)  If the Settlement Class Member does not want to use the Certificate, it can be transferred

9    to a family member with the same last name or a person living at the same address as the Class

10   Member.  (*Id.*)

11        This is not a coupon settlement.  First, all Settlement Class Members were given a choice

12   to receive a monetary payment.  *Meyenburg v. Exxon Mobil Corp.*, 3:05-CV-15-DGW, 2006 WL

13   5062697, at *4 (S.D. Ill. June 5, 2006) (settlement approved where class members were given a

14   choice of cash or coupon).  Second, "[u]nlike coupon settlements…it does not require class

15   members to purchase something they might not otherwise purchase to enjoy its benefits."

16   *Blessing v. Sirius XM Radio Inc.*, 09 CV 10035 HB, 2011 WL 3739024, at *2 (S.D.N.Y. Aug. 24,

17   2011).  Rather, Settlement Class Members, each a former 24 Hour Fitness Unlimited Guest

18   Privileges SPA member, will receive a Certificate for three **free** months of **greater** access to 24

19   Hour Fitness locations than nearly all of them had under their previous agreement.  *See id.* (not a

20   coupon settlement where former subscribers received a free month of radio or internet service);

21   *Dupler v. Costco Wholesale Corp.,* 705 F. Supp. 2d 231, 237 (E.D.N.Y.2010) (approving

22   settlement that awarded additional months of membership to current members and temporary

23   membership to those whose membership expired); *see also In re Excess Value Ins. Coverage*

24   *Litig.*, M-21-84RMB, 2004 WL 1724980, at *14 (S.D.N.Y. July 30, 2004) (not a coupon

25   settlement where voucher was for relatively inexpensive product and would often cover the entire

26   cost of a purchased item).

27        By indicating an overwhelming preference to not opt-out, object to the settlement, or claim

28   the monetary benefit provided by the Settlement, members of the Settlement Class clearly

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  recognize that the Certificates have substantial value (which they do) and/or are fair in relation to

2  the Charges at Issue for each Settlement Class Member.  Not a single Settlement Class Member

3  objected to the Settlement and only four members opted out.  (Sherwood Decl. ¶¶ 22-23.)  Based

4  upon an accounting by the Settlement Administrator, approximately 7.5% of Settlement Class

5  Members chose the monetary payment and approximately 92.5% of Settlement Class Members

6  will be mailed the Certificate.  (Harnett Decl. ¶ 11.)  In response to the 53,354 notice letters

7  mailed (based on 53,354 Charges at Issue), 3,979 claim forms were received by the Settlement

8  administrator opting for receipt of the $12.11 monetary reimbursement, and thus 49,371

9  Certificates will be distributed. (Sherwood Decl. ¶ 20.)[5]

10  If the Settlement is finally approved, the Settlement Class will receive total direct benefits

11  of between $7,453,341.98 to $9,921,891.98 ($48,185.69 in monetary reimbursement and between

12  $7,405,156.29 and $9,873,706.29 in Certificates).  (*See* Harnett Decl. ¶ 13.)  The total value of the

13  Settlement, including all class benefits is between $912,808.06 to $1,012,771.37.  (*Id.* ¶ 14.)

14  This Court has previously expressed interest in understanding how many class members

15  will use the Certificates that are issued.  As previously noted in the Parties' Joint Supplemental

16  Brief in Support of Preliminary Approval, the Parties cannot know with certainty before the

17  Court's final approval, but the experience administering the *Friedman* settlement provides a

18  reasonable predicator of the likely use of the certificates in this case.  (*See* Joint Suppl. Br. in

19  Supp. of Final Approval, Dkt. # 19, at 9:6-11.)  Even assuming that only 6% of those who receive

20  _____

21  [5] The 7.5 percent claims rate by itself—even without considering the anticipated redemption rate

22  of gym membership certificates—is well within the approved range of similar consumer class actions, especially in light of the option for 100 percent recovery of the alleged out of pocket

23  damages.  *See White v. Experian Info. Solutions, Inc.*, 803 F. Supp. 2d 1086, 1099-1100 (C.D. Cal. 2011) (holding that a 5 percent claims rate, accompanied by a low opt out and objection rate,

24  "weighs in favor of approving the [s]ettlement"); *In re HP Inkjet Printer Litig.*, 5:05-CV-3580 JF, 2011 WL 1158635, at *8 (N.D. Cal. Mar. 29, 2011) (granting final approval where less than 1

25  percent of the class filed a claim form for electronic credits on HP products for $2.00 to $6.00; noting that "[a]s may be expected in such a settlement, the overwhelming majority did not respond

26  at all"); *Simon v. Toshiba Am.*, No. C 07-06202 MHP, 2010 WL 1757956, at *1 (N.D. Cal. Apr.

27  30, 2010)  (granting final approval where 2 percent of the class filed claims to receive either a free motherboard or a $35 credit voucher and non-responders received nothing).

28

the Certificate choose to use the Certificate, and after adding the $48,185.69 in monetary reimbursement that will be disseminated to Settlement Class Members that requested the monetary option, the Class would still receive a *direct* settlement benefit of $492,606.06 to $640,756.06, depending on the value adopted from the demonstrated range of Certificate valuation.  (Harnett Decl. ¶ 13.)

Calculating just the direct benefit to the Settlement Class Members does not account for the value of the injunctive relief, or the additional amounts 24 Hour has agreed to pay for class notice, claims administration, and attorneys' fees and costs.  These amounts give valuable benefits to the Settlement Class and to consumers generally, without the risk of protracted litigation.  Using the most conservative valuation of the injunctive relief ($110,201), together with the additional amounts 24 Hour has agreed to pay in notice costs, administrative costs, and for payment of attorneys' fees and litigation costs ($310,000), the total value of the Settlement increases to approximately $912,808.06 to $1,012,771.37.  Therefore, the Settlement Class, *as a whole*, will receive anywhere from **141% to 157%** of the total Charges at Issue that the Class were assessed as a whole ($646,116.94).  (Harnett Decl. ¶ 14.)

### b.   *Class Notice, Claims, and Settlement Administration*

24 Hour will pay all of the costs to notify class members of the settlement and will pay the costs for claims administration upon final approval.  Because 24 Hour will bear these costs, this is another valuable benefit to the Class, worth up to $110,000.  The approved notice plan provided direct mail notice to thousands of Settlement Class Members identified from 24 Hour's databases, records and files, and, in addition required that a website be created where class notice and information regarding the Settlement would be available.  24 Hour retained Gilardi & Co. LLC ("Gilardi"), an experienced notice expert and claims administrator to administer the settlement and implement the Court ordered notice plan.  (Sherwood Decl. ¶ 3.)

Gilardi mailed notice and claim forms to 47,858 Settlement Class Members on December 16, 2011.  Gilardi also: (a) skip traced mail returned with an invalid address, and re-mailed notice to the approximately 5,750 Settlement Class Members for whom updated addresses could be identified; (b) mailed Notice and Claim Forms to Settlement Class Members who made either

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1 | written or telephone requests; (c) processed undeliverable mail, exclusion requests, and

2 | correspondence; (d) established and maintained a toll free hotline with live operators for

3 | Settlement Class questions and assistance; (e) received and validated Claim Forms; and (f) sent

4 | cure letters to Settlement Class Members who failed to sign their claim forms.  (*Id.* ¶¶ 3-4.)

5 | Gilardi also published a website dedicated to notifying Settlement Class Members of the existence

6 | and terms of the Settlement.  (*Id.* ¶¶ 11-12.)  The website provided copies of the Notice and the

7 | Settlement Agreement, an FAQ section, instructions to receive a claim form and file it, relevant

8 | Settlement deadlines, and copies of important Court documents.  (*Id.*; Harnett Decl. Ex. 2.)

9 |                              *c.   Injunctive Relief*

10 |              By virtue of an agreed injunction binding 24 Hour, the Settlement Agreement requires that

11 | 24 Hour permanently refrain from collecting the Charges at Issue from the accounts of canceling

12 | persons holding an Unlimited Guest Privileges SPA.  (Harnett Decl. Ex. 1 (Settlement Agreement)

13 | at ¶ 2.2.)  As part of the Settlement, 24 Hour has represented that the practice of collecting the

14 | Charges at Issue was terminated on March 1, 2010, pursuant to the settlement in the *Friedman*

15 | Class Action.  At that time the practice was also terminated as to the Unlimited Guest Privileges

16 | SPAs.  (*Id.*)  However, the Settlement here provides the Settlement Class Members with an

17 | enforceable injunction which specifically applies to the Unlimited Guest Privileges SPAs.  The

18 | injunction issued in the *Freidman* Class Action did not enjoin 24 Hour's actions in regards to the

19 | Unlimited Guest Privileges SPAs, and thus, the injunctive benefit here is nether duplicative of, nor

20 | was provided by the *Friedman* Class Action.  The value of the injunctive relief included here,

21 | therefore, has a value separate and apart from the injunction entered in *Friedman*.  This is a

22 | significant and valuable addition to the settlement.  (*Id.*; *see* Mem. of P. & A. in Supp. of Pl.'s

23 | Mot. for Prelim. Approv., Dkt. #7, at 10:1-11:2.)

24 |              The Settlement Class here, dating back to before the first Charge at Issue was incurred,

25 | includes approximately 47,858 members and involves approximately 53,354 Charges at Issue.

26 | (Brannon Decl. ¶ 13.)  In addition, 24 Hour's records revealed that at the Parties signed the

27 | Settlement Agreement, approximately 9,100 Unlimited Guest Privileges SPAs were still active.

28 | (Harnett Decl. ¶ 10.)  (24 Hour represents that in 2009, it ceased offering for sale the SPA

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Memberships.)  According to 24 Hour, approximately 1,100 persons have cancelled their

2   Unlimited Guest Privileges SPAs since August 2011, and thus, these 1,100 persons were not

3   assessed Charges at Issue by 24 Hour.  Thus, the events surrounding the Settlement saved these

4   persons approximately $13,321 in post-cancellation dues (based upon the average Charges at

5   Issue).

6   Absent the injunction provided by this Settlement, 24 Hour would not be enjoined from

7   assessing the Charges at Issue upon future cancellation of the approximate 8,000 still active

8   Unlimited Guest Privileges SPAs.  (*Id.*)  By the injunctive relief obtained as a part of this

9   Settlement, 24 Hour will be prohibited by Court Order from collecting the Charges at Issue in

10   connection with any post-request for cancellation of these active Unlimited Guest Privileges

11   SPAs, as described in Section 2.2 of the Settlement Agreement.  (*Id.*)  Conservatively, using the

12   average amount of the Charges at Issue, this means that 24 Hour is agreeing that it will not assess

13   an estimated $96,880 in Charges at Issue against the accounts of persons who may cancel the

14   existing Unlimited Guest Privileges SPAs at some point in the future.  (*Id.*)

15   Therefore, in addition to the $13,321 that the approximately 1,100 persons who recently

16   cancelled their Unlimited Guest Privileges SPAs since August 2011 saved by not being assessed

17   post-request cancellation dues, 24 Hour will refrain, by virtue of the injunction provided by this

18   Settlement, from collecting approximately $96,880 in Charges at Issue from approximately 8,000

19   persons with Unlimited Guest Privileges SPAs, totaling $110,201 in Charges at Issue.  Even where

20   a defendant voluntarily refrains from its unlawful conduct, a class still benefits from an injunction

21   to prevent the defendant from resuming such unlawful conduct post-litigation.  (*Id.*); *see Aguilar v.*

22   *Avis Rent A Car Sys., Inc.*, 21 Cal. 4th 121, 133 (1999); *F.T.C. v. Affordable Media*, 179 F.3d

23   1228, 1237 (9th Cir. 1999); *United States v. Uniroyal, Inc.*, 300 F. Supp. 84, 100 (S.D.N.Y. 1969);

24   *see also United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The purpose of an

25   injunction is to prevent future violations.").

26   / / /

27   / / /

28   / / /

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**III.    THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT BECAUSE IT IS FAIR, REASONABLE AND BENEFICIAL TO THE SETTLEMENT CLASS.**

The Settlement is fair, reasonable, and provides substantive benefits to the Settlement Class and current and future consumers holding active Unlimited Guest Privileges SPAs.  The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."  *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  Federal Rules of Civil Procedure 23(e)(1)(C) dictates that a court should consider the fairness, adequacy, and reasonableness of a settlement by balancing many factors, which include: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement.  Fed. R. Civ. P. 23(e)(1); *see Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Nat'l Rural Tele. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004).  This list is not exclusive and different factors may predominate in different factual contexts.  *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993).  The importance of each factor varies with the circumstances of each case and is dictated by the nature of the claim and the relief sought.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  A court may also consider the absence of collusion in the settlement process.  *Churchill*, 361 F.3d at 575.

"The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice*, 688 F. 2d at 625.  A proposed settlement shall not "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.*  The court is not "empowered to rewrite the settlement agreed upon by the Parties" and "may not delete, modify, or substitute certain provisions." *Id.* at 630.  "The settlement must stand or fall in its entirety." *Hanlon*, 150 F. 3d at 1026.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1

**A.  THE SETTLEMENT AGREEMENT IS PRESUMPTIVELY FAIR**

2

A settlement agreement is entitled to a "presumption of fairness [] where: (1) counsel is

3

experienced in similar litigation; (2) settlement was reached through arm's length negotiations;

4

[and] (3) investigation and discovery are sufficient to allow counsel and the court to act

5

intelligently."  *In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13555, at *11, 2005 WL

6

1594403, at *2 (C.D. Cal. June 10, 2005); *see Linney v. Cellular Alaska P'ship.*, 1997 WL

7

450064, at *5 (N.D. Cal. July 18, 1997); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18

8

(N.D. Cal. 1980).  The Settlement in this case satisfies these criteria.

9

The parties here negotiated a settlement that provides Settlement Class Members with

10

relief that, comparatively, provides greater benefits than the *Friedman* settlement provided to class

11

members in that case (specifically, the Settlement here guarantees that Settlement Class Members

12

will have the opportunity to collect 100% of the average amount of the Charges at Issue which

13

percentage is greater to the ratio in the *Friedman* Class Action).  Given that the settlement in the

14

*Friedman* Class Action was found to be fair, reasonable, and adequate, this Settlement should also

15

be considered to be fair, reasonable, and adequate, or at the very least it warrants a presumption of

16

fairness.  The fact that there have been no objections to the Settlement and only a handful of opt-

17

outs further demonstrates the reasonableness of the Settlement.  *See Romero v. Producers Dairy*

18

*Foods, Inc.*, 2007 WL 3492841, at *2 (E.D. Cal. Nov. 14, 2007) (presumption of fairness arose

19

where there were over 100 claims filed, only four exclusions, and no objections).

20

Furthermore, both Plaintiff and 24 Hour are represented by experienced counsel who had

21

the benefit of the substantial investigation and extensive discovery conducted in both the

22

*Friedman* Class Action and the instant action.  (*See* Harnett Decl. ¶ 6; Keller Decl. ¶¶ 3-4.)

23

During the more than three years of litigation in the *Friedman* Class Action, the parties exchanged

24

comprehensive written discovery, conducted 31 depositions around the country, and exchanged

25

over 230,000 pages of documents or other electronically stored information.  (*See* Mem. of P. &

26

A. in Supp. of Pl.'s Mot. for Prelim. Approv., Dkt. #7, at 2:17-3:18.)  Before actually filing the

27

Complaint in the instant action, the Parties diligently pursued a settlement before filing the

28

complaint.  (*See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Attorneys' Fees, Costs and Incentive

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

Award, Dkt. #26-1, at 4:1-24.)  During that time, the Parties engaged in informal discovery, preparation of a complaint, extensive settlement negotiations, and ultimately the settlement related documents.  (*Id.*)  After entering into the MOU outlining the basic terms of the settlement on July 9, 2010, the Parties continued negotiations of the specific settlement terms.  (*Id.*)  Numerous drafts of the Settlement Agreement were exchanged and revised before the Parties agreed to execute a comprehensive Settlement Agreement that included the complete notice plan for all class members.  (*Id.*)

The substantial work that counsel for the Parties undertook in this action, informed by their experience in the *Friedman* Class Action, resulted in reasoned decision-making about the fairness of the Settlement by counsel well-versed in the claims and defenses at issue in this case.  (*See* Mem. of P. & A. in Supp. of Pl.'s Mot. for Prelim. Approv., Dkt. #7, at 19:3:17.)  This allowed Class Counsel to act intelligently and in the best interests of the Settlement Class, as evidenced by the favorable Settlement, the lack of objections, and the negligible number of opt-outs.  (*See* Harnett Decl. ¶¶ 4-6; Keller Decl. ¶¶ 3-4.)   The Settlement Agreement is thus entitled to a presumption of fairness.

### B.  THE STRENGTH OF PLAINTIFF'S CASE

The complexities and uncertainty inherent in litigating a RICO case through trial and appeal favors granting final approval.  "[A] proposed settlement is not to be judged against a speculative measure of what might have been awarded in a judgment in favor of the class."  *DIRECTV*, 221 F.R.D. at 526.  As noted by the Ninth Circuit:

> [T]he settlement or fairness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor [the Court of Appeals] is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wastefulness and expensive litigation that induce consensual settlements.

*Officers for Justice*, 688 F.2d at 625.

In considering the strength of the plaintiff's case, legal uncertainties at the time of settlement – particularly those which go to fundamental legal issues – favor approval.  *See Glass v. UCS Fin. Servs., Inc.*, 2007 WL 221862, at *3 (N.D. Cal. Jan. 26, 2007).  This litigation presented complex and novel claims under RICO.  Courts in the Ninth Circuit have frequently

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  acknowledged RICO's complex nature.  *See, e.g.*, *Matek v. Murat*, 638 F. Supp. 775, 783 (C.D.

2  Cal. 1986); *United States v. Benny*, 559 F. Supp. 264, 266 (N.D. Cal. 1983); *Richards v. Jain*, 168

3  F. Supp. 2d 1195, 1208 (W.D. Wash. 2001).  As with any large, complex class action, "[P]laintiffs

4  face a heavy and difficult burden in proving liability for those federal claims."  *In re Farmers*

5  *Group Stock Options Litig.*, 1991 U.S. Dist. LEXIS 20133, at *21 (E.D. Pa. Dec. 19, 1991).

6       While the *Friedman* plaintiffs were able to succeed in certifying their RICO claim for class

7  treatment, and defeating summary judgment, such results are not certain in this case.  And despite

8  such favorable results, the *Friedman* court found that the eventual settlement in that case was fair

9  and reasonable.  (Harnett Decl. ¶ 4; Keller Decl. ¶ 3.)  Even assuming Plaintiff did prevail on both

10  class certification and summary judgment here, 24 Hour would likely appeal both those decisions,

11  as well as any resulting judgment.  (*Id.*)  Appellate practice would make any benefit for the class

12  uncertain, prolonging final resolution for many years.  *See Grannan v. Alliant Law Group, P.C.*,

13  C10-02803 HRL, 2012 WL 216522, at *6 (N.D. Cal. Jan. 24, 2012).  In contrast, settlement would

14  assure class members real and substantial relief now.

15       Thus, although Plaintiff believes that he has a strong case, the risks of RICO and complex

16  class action litigation and trial militate in favor of the Settlement.

17       **C.  COMPLEX, RISKY, AND LENGTHY LITIGATION, AT GREAT EXPENSE.**

18       If the Court does not approve this settlement, this action will proceed to intense litigation,

19  and possible trial, which will be risky, complex, lengthy, and expensive for all involved.  "In most

20  situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to

21  lengthy and expensive litigation with uncertain results."  *DIRECTV*, 221 F.R.D. at 526 (internal

22  quotation marks and citations omitted).

> The Court shall consider the vagaries of litigation and compare the significance of immediate
> recovery by way of the compromise to the mere possibility of relief in the future, after
> protracted and expensive litigation. In this respect, '[i]t has been held proper to take the bird
> in hand instead of a prospective flock in the bush.'

*Id.* (quoting *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974)).

26       The expense and possible duration of the litigation, including the likelihood of appeal, are

27  considered in evaluating the reasonableness of a settlement.  *Glass*, 2007 WL 221862, at *3

28

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1  (quoting *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).  The cost, in

2  terms of both time and resources, to litigate and try this case against a well-funded defendant like

3  24 Hour with a large team of lawyers will unquestionably be significant.  In the *Friedman* action,

4  which proceeded to the summary judgment stage, Class Counsel expended nearly $400,000.00 in

5  costs alone, and the plaintiffs incurred millions in attorneys' fees.  (Harnett Decl. ¶ 5.)  Similar

6  costs and fees would be expected if the Parties were to continue to litigate this action through and

7  including trial.  (*Id.*)

8        Even after incurring these considerable expenses, there is no assurance of a favorable jury

9  verdict. "Given the length, complexity, and number of issues involved, it is very possible that a

10  jury may not . . . reach . . . a unanimous verdict on all issues."  *DIRECTV*, 221 F.R.D. at 526-27.

11  Even if the Class obtained a favorable verdict, the previous attempted interlocutory appeals that 24

12  Hour filed in the *Friedman* Class Action strongly foreshadows that appeals would be highly likely

13  should Plaintiff succeed in certifying a class, defeat summary judgment, and/or prevail at trial.

14  Litigating through an appeal would only cause further expense, delay, and uncertainty for the

15  Class.  (Harnett Decl. ¶ 5; Keller Decl. ¶ 3.)

16        On balance, under this factor too, final approval of the Settlement is warranted.

17  "[C]onsidering the potential risks and expenses associated with continued prosecution of the

18  Lawsuit, the probability of appeals, the certainty of delay, and the ultimate uncertainty of recovery

19  through continued litigation," on balance, the proposed settlement is fair, reasonable, and

20  adequate.  *Lo v. Oxnard European Motors, LLC*, 2011 WL 6300050, at *5 (S.D. Cal. Dec. 15,

21  2011) (quoting *Bellows v. NCO Fin. Sys.,* 2008 U.S. Dist. LEXIS 103525, at *19, 2008 WL

22  5458986 (S.D. Cal. Dec. 10, 2008)).

23      **D.  THE RISK OF MAINTAINING CLASS ACTION STATUS THROUGHOUT TRIAL.**

24        Simply because the federal claims in the *Friedman* Class Action were certified does not

25  guarantee that Plaintiff's RICO claim, or his pendent state law claims, will be certified in this case.

26  As noted above, this action involves a different type of agreement than the monthly payment

27  memberships at issue in the *Friedman* Class Action.  Further, the law for class certification has

28  changed since the United States Supreme Court issues it ruling in 2011 in *Wal-Mart Stores, Inc. v.*

*Dukes*, 131 S. Ct. 2541 (2011).  Class Counsel weighed the ever present threat of not being certified, or subsequently decertified, as a class action in considering the Settlement.  (Harnett Decl. ¶ 5; Keller Decl. ¶ 3.)  Accordingly, this factor weighs in favor of granting approval.

### E.  THE AMOUNT OFFERED IN SETTLEMENT.

As noted above, the Settlement provides significant value to Settlement Class Members specifically to consumers currently holding SPA Memberships.  In assessing the consideration obtained by Settlement Class Members, "it is the complete package taken as a whole, rather than the individual component parts, that must be examined for overall fairness." *DIRECTV*, 221 F.R.D. at 527.  "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *Id.* (citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998)).

Here, the claims process gave every Settlement Class Member the opportunity to receive *100 percent* of the average out-of-pocket damages allowed now, rather than risking prolonged and uncertain litigation of claims that are novel, complex, and subject to dispositive defenses that could result in no recover for the class.  *See Touhey v. United States*, No. EDCV 08-01418-VAP, 2011 WL 3179036, at *7 (C.D. Cal. July 25, 2011) (settlement providing full recovery to class members "weighs heavily in favor of final approval" even where only 2 percent of the class filed a claim).  Moreover, courts frequently approve settlements that provide *only* a monetary benefit and *only* if a class member returns a claim form, whereas this Settlement provides a monetary component *and* a three month gym membership automatically to all non-responders.  *See In re TD Ameritrade Account Holder Litig.*, Nos. C 07-2852 SBA, C 07-4903 SBA, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) (class members required to submit a claim form to recover between $50 to $2,500 if they suffered identity theft as a result of defendants' alleged security breach of customer data); *White*, 803 F. Supp. 2d at 1093 (class members required to submit a claim form to recover monetary payment for damages suffered by defendant's alleged failure to maintain reasonable procedures to ensure accurate reporting of debts discharged in bankruptcy).

An impressive aspect of this settlement is that the value of the benefits conferred to Class Members actually *exceeds* the amounts Plaintiff alleges that 24 Hour took from Settlement Class

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   Members by virtue of its practice of assessing the Charges at Issue.  24 Hour received **$646,116.94**

2   in Charges at Issue from Settlement Class Members.  Plaintiff believes that the value of this

3   Settlement, including direct and indirect benefits to the Settlement Class and current holders of

4   Unlimited Guest Privileges SPAs, is at least **$912,808.06**.

5     In considering the amount offered in settlement, the Court may also look at the difficulties

6   Plaintiff would face if litigation proceeds.  *In re Mego Fin. Cor. Sec. Litig.*, 213 F.3d at 459.  The

7   potential risk Plaintiff would face if litigation proceeds, as previously discussed, underscores the

8   fact that the negotiated Settlement is a great result.  The consideration to the Settlement Class is

9   fair, reasonable and adequate, especially considering the complexities of this litigation.  *See id.* at

10  459 (settlement of approximately one-sixth of potential recovery was fair and adequate in light of

11  difficulties and complexities of lawsuit).  Consequently, this factor heavily favors approval of the

12  settlement.

13    **F.   THE EXTENT OF DISCOVERY COMPLETED AND STAGE OF PROCEEDINGS.**

14    The Parties settled with full knowledge of the strengths and weaknesses of their respective

15  cases, gleaned from information obtained from extensive discovery in the *Friedman* Class Action,

16  and through further investigation and informal discovery in the instant action.  The extent of

17  discovery is relevant in determining the adequacy of the Parties' knowledge of the case.  *See*

18  *DIRECTV*, 221 F.R.D. at 527.  "A court is more likely to approve a settlement if most of the

19  discovery is completed because it suggests that the Parties arrived at a compromise based on a full

20  understanding of the legal and factual issues surrounding the case."  *Id.* (internal citations

21  omitted).  "A settlement following sufficient discovery and genuine arms-length negotiation is

22  presumed fair." *Id.* at 528.

23    Although the Parties did not engage in formal discovery in this case, the Parties were well

24  aware of the strengths and weaknesses of their respective cases, having vigorously litigated the

25  *Friedman* Class Action for over three years, including substantial formal discovery and numerous

26  discovery motions.  (Harnett Decl. ¶¶ 4-5; Keller Decl. ¶ 4.)  After the *Friedman* settlement, the

27  Parties conducted informal discovery on issues unique to this litigation and the Unlimited Guest

28  Privileges SPAs that were not present in *Friedman*, such as class size and the amount of damages

suffered by the class.  "There is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).   Settlement spares the Parties the costs of protracted litigation and eases the congestion of judicial calendars.  *See id.* at 943.  In light of the extensive discovery and information available to the Parties' at the time of Settlement, and the public policy favoring resolution of class actions by settlement to avoid protracted litigation, final approval of the Settlement is warranted.

### G. The Experience and Views of Counsel.

Counsel for the Parties are experienced and respected class action attorneys and believe the settlement is fair, adequate, and reasonable.  "'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."  *DIRECTV*, 221 F.R.D. at 528 (citing *In re Painewebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997)).  Counsel "are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation."  *Id.* (quoting *Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).  "[A]bsent fraud, collusion, or the like, [the court] should be hesitant to substitute its own judgment for that of counsel." *Id.*   Here, Class Counsel leading this case have nearly 40 combined years of extensive experience representing plaintiffs in consumer class actions and other complex litigation and settling cases worth hundreds of millions to the respective classes.  (Harnett Decl. ¶ 6; Keller Decl. ¶ 3; *see also* Harnett Decl. in Supp. of Attorneys' Fees and Costs and Incentive Award, Dkt. #27, ¶¶ 3-15, Ex. 1; Keller Decl. in Supp. of Attorneys' Fees and Costs and Incentive Award, Dkt. #28, ¶¶ 3-4, Ex. 1.)  Moreover, the Settlement was the product of arms' length settlement negotiations.  (Harnett Decl. ¶ 6; Keller Decl. ¶ 5.)  Counsel for both sides believe that the Settlement Agreement reflects the relative strengths and weaknesses of the Parties' respective claims and defenses, as well as the substantial risks presented in continuing litigation.  All Counsel and all Parties believe that the settlement is fair, adequate, and reasonable.  (Harnett Decl. ¶ 6; Keller Decl. ¶ 4; *see generally* Parties' Joint Supplemental Brief in Support of Preliminary Approval, Dkt. #19.)  Accordingly, this factor heavily favors granting final approval of the Settlement.

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

**H. THE PRESENCE OF A GOVERNMENTAL PARTICIPANT.**

No governmental entity participated in the prosecution of this action or the negotiation of this settlement. Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, notice of the settlement was provided to the appropriate governmental entities and agencies on September 16, 2011. The purpose of this notice is to permit the government to object in settlements considered by the governmental authorities as unfair to the Class. The absence of any objection by a governmental entity favors granting final approval.

**I. THE REACTION OF CLASS MEMBERS TO THE PROPOSED SETTLEMENT.**

The reaction of Settlement Class Members further supports the settlement as fair and reasonable. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *DIRECTV*, 221 F.R.D. at 529 (citing *In re Marine Midland Motor Vehicle Leasing Litig.*, 155 F.R.D. 416, 420 (W.D.N.Y. 1994)). The number of objectors is viewed in relation to the overall class size; a low percentage of objectors weighs in favor of approval of settlement. *See Glass*, 2007 WL 221862, at *5 (approving a settlement with objection rate of 1 in 1,647, in a class of 13,716 with 8 objectors).

In this case, the settlement administrator mailed notice to nearly every class member. (Sherwood Decl. ¶¶ 6-10; Brannon Decl. ¶¶ 6-13.) The notice contained comprehensive information far exceeding the disclosures generally required in class actions. (Sherwood Decl. Ex. A); *see DIRECTV*, 221 F.R.D. at 529. Only four (4) of the almost 50,000 potential Settlement Class Members opted out of the Settlement here, and not a single Settlement Class member has objected. (Sherwood Decl. ¶¶ 22-23.) Combined, the opt outs and objections amount to only .008% of the Settlement Class. Therefore, it may be inferred that the overwhelming majority of Settlement Class Members considers this Settlement to be favorable, which also favors approval by the Court.

**J. THE ABSENCE OF COLLUSION IN SETTLEMENT PROCESS.**

There was no collusion in the Settlement of this action. (Harnett Decl. ¶¶ 6; Keller Decl. ¶ 5.) The Settlement is the result of arms length settlement negotiations, and assures for these

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

WASSERMAN, COMDEN, CASSELMAN & ESENSTEN, L.L.P.
5567 RESEDA BOULEVARD, SUITE 330
POST OFFICE BOX 7033
TARZANA, CALIFORNIA 91357-7033

1   settlement class members the same type of relief (with even better benefits proportionately) as that

2   achieved in the *Friedman* Class Action, which was negotiated by a capable and neutral private

3   negotiator and approved by a well-respected district court judge.  (Harnett Decl. ¶ 6; Keller Decl. ¶

4   5.)  As a result, this factor also weighs in favor of granting final approval of the settlement.

5          After weighing all of the *Churchill* factors, the Court should agree with the Parties and

6   conclude that the proposed Settlement is fair, reasonable, and adequate.

7   **IV.    A SETTLEMENT CLASS HAS BEEN PROPERLY CERTIFIED FOR PURPOSES**

8          **OF OBTAINING FINAL APPROVAL OF THE SETTLEMENT.**

9          In order to grant final certification of a settlement class, the requirements of Rule 23 must

10  generally be satisfied.  *See* Fed. R. Civ. P. 23; *see also Hanlon*, 150 F. 3d at 1019.  After

11  considering Plaintiff's Motion for Preliminary Approval of the Settlement Agreement, as well as

12  the Parties' Joint Supplement to the Preliminary Approval Motion, the Court previously found that

13  the Rule 23 elements were satisfied, and thus conditionally certified the a class for purposes of

14  settlement.  (*See* Nov. 23, 2011 Order, Dkt. #25, ¶ 2.)  No class member has objected to the

15  Court's certification of the Settlement Class.  The Court ordered that Settlement Class certification

16  was to remain in effect unless the Court does not grant final approval of the Settlement, or the

17  Court's Order granting final approval of Settlement is reversed or modified on appeal.  (*Id.* ¶ 3.)

18  Accordingly, a Settlement Class has been properly certified in this class action for purposes of

19  final approval of the Settlement.

20  **V.    CONCLUSION.**

21         Based on the foregoing, Plaintiff respectfully requests that the Court find that the Parties'

22  proposed Settlement is fair, reasonable, and adequate, and based thereon grant final approval of

23  the Settlement Agreement.

24  DATED: February 29, 2012            Respectfully submitted,

25

26                                     By:         /s/-Melissa Meeker Harnett
                                              MELISSA MEEKER HARNETT
27                                     Attorneys for Plaintiff, ALBERT ALATORRE AND ON
                                       BEHALF OF ALL OTHERS SIMILARLY SITUATED
28